

**FILED**
**Apr 25, 2024**
**07:00 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| Pamela Adams, | ) | **Docket No. 2024-60-0763** |
| **Employee,** | ) | |
| v. | ) | |
| LHC Group, a/k/a SunCrest | ) | **State File No. 19187-2023** |
| Companion Services, | ) | |
| **Employer,** | ) | |
| And | ) | **Judge Kenneth M. Switzer** |
| Indemnity Insurance Co. of N.A., | ) | |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED RELIEF
## (DECISION ON THE RECORD)

---

Pamela Adams requested an expedited hearing on the record without objection from SunCrest Companion Services. Ms. Adams seeks panels of ear, nose, and throat specialists and ophthalmologists, temporary disability benefits, and attorney's fees. For the reasons below, the Court denies her requests at this time.

### Claim History

Ms. Adams, a licensed practical nurse, was assisting a patient on March 3, 2023, when she injured her shoulder as she fell backward before landing on her elbows and right arm. She also hit her head on a door as she fell. SunCrest accepted the claim, and Dr. Matthew Willis performed shoulder surgery in May.

For the head injury, Ms. Adams chose Dr. Subir Prasad from a panel. At her first visit in October, Dr. Prasad ordered an MRI and prescribed medication. He noted visual changes and tinnitus and wrote that he might order evaluations by an ophthalmologist and ENT if the MRI results were normal and her symptoms did not improve from the medication.

1

In November, Dr. Prasad made referrals to both an ENT and ophthalmologist after the MRI results were normal, but apparently Ms. Adams's symptoms continued.[1]

*Letters to Dr. Prasad*

Both attorneys sent Dr. Prasad letters asking about the referrals, which this decision turns on.

SunCrest sent the first letter to Dr. Prasad asking about the referrals and causation. In his response, Dr. Prasad checked "yes" when asked, "Would you agree that a referral to the ENT specialist for a diagnosis of tinnitus is not more than 50% related to the work incident, which occurred on March 3, 2023?" (Emphasis in original). Dr. Prasad likewise checked "yes" when asked, "Would you agree that the referral for blurry vision to an ophthalmologist was not more than 50% related to the work incident on March 3, 2023?" Based on these responses, SunCrest did not honor the referrals.

Ms. Adams sent a follow-up letter to Dr. Prasad. The initial questions dealt with the ENT referral as it relates to vestibular disorder. She asked, "Do you agree or disagree that based on clinical findings and reports to you by Ms. Adams that she has dizziness[,] which may be some form of vestibular disorder, you opine that she needs to see an ENT specialist?" Dr. Prasad wrote "yes." She then asked, "That because you profess not to be an expert in vestibular disorders, do you agree or disagree that you cannot render an opinion as to whether or not the causation of a potential vestibular disorder is causally related to striking her head at work?" Dr. Prasad wrote, "disagree—I can opine on neurologic etiologies of vestibular disorder."

The next pair of questions asked about tinnitus. "Do you agree or disagree that based upon clinical findings and reports to you by Ms. Adams that she suffers from ringing in her ears[,] which could be tinnitus, you opine that she needs to see a specialist most likely an ENT, who can diagnose and treat tinnitus?" Dr. Prasad wrote "yes." She then asked, "That because you profess not to be an expert in tinnitus, do you agree or disagree that you cannot render an opinion as to whether or not the causation of the tinnitus is causally related to striking her head in her work injury?" Dr. Prasad wrote, "disagree—I can opine on neurologic etiologies of tinnitus."

Ms. Adams's final questions touched on her blurred vision. She asked, "Do you agree or disagree that based upon clinical findings or reports by your patient that she suffers from blurred vision, which may or may not be a consequence of a vestibular disorder or tinnitus, that she should be referred to an ophthalmologist for that blurred vision?" Dr. Prasad wrote "yes." Finally, she asked, "That because you profess not to be an expert in

---

[1] The parties only offered slips documenting the referrals and not the complete medical records from this visit.

blurred vision[,] which could be a consequence of trauma, vestibular disorder, or tinnitus, do you agree or disagree that you cannot render an opinion as to whether or not the blurred vision is causally related to her striking her head at work?" Dr. Prasad wrote, "disagree— I can opine on neurologic etiologies of visual symptoms."

*Evidence regarding temporary disability benefits*

After the shoulder surgery, Dr. Willis placed work restrictions; his last note dated December 5 stated that Ms. Adams cannot lift more than ten pounds. None of Dr. Prasad's records specifically states that he took her off work or limited her to restricted duty.

In her petition for benefit determination, Ms. Adams alleged that she received temporary disability benefits until December 14. She did not testify in her declaration about the circumstances of SunCrest offering her modified duty and her response. Rather, the parties submitted written communications as the sole proof on this issue.

In a December 14, 2023 letter, SunCrest's human resources specialist, Laney Guidry, sent Ms. Adams a letter offering her nursing work beginning December 18 within her ten-pound lifting restriction. The letter assured Ms. Adams that the tasks would be within her restrictions and instructed her to contact Ms. Guidry or a supervisor if she were asked to work beyond her restrictions.

Later, a January 5 email from Ms. Adams to Ms. Guidry stated that Ms. Adams recently received "new restrictions" from Dr. Willis, although Ms. Adams did not submit records documenting them. Ms. Adams additionally wrote that she is "willing and ready to work within those restrictions." Ms. Guidry asked if she could return the very next day, but Ms. Adams declined, stating she had doctor appointments (unrelated to the injury).

Ms. Adams also asked about her work duties. Ms. Guidry responded, "We can accommodate you starting tomorrow working in the field with patient care within your restrictions." The next email, from Ms. Adams, stated, "Per our phone conversation at 10:47am today, you will inform me of the assignments available by the end of the day."

On January 8, Ms. Adams emailed Ms. Guidry again to state that she had not heard back from her. Ms. Adams wrote, "I have followed all of your instructions to email medication list and restrictions. I have not denied or refuse[d] any work within the restrictions in December 2023 nor have I refused or denied to work within my restrictions since our last conversation January 4th at 10:47 am [sic]."

Ms. Guidry disagreed with these statements in her same-day response. She wrote that Ms. Adams "indicated when [they] spoke in December that [she] would not be able to accept the light duty offered due to medication, which [she] believed impaired [her] ability to drive, although this limitation was not notated [sic] by [her] physicians." Ms. Guidry

then offered a light-duty position visiting patients, where she would not have to work outside of her restrictions. She added that this position had a "focus on medication or otherwise will be hands off visits that will not require you to carry a nurse's bag." If these visits were unavailable, Ms. Guidry wrote that Ms. Adams would perform "administrative work, which will primarily include answering phones or auditing files." No response to this offer was included in the record, and Ms. Adams filed her petition on February 1.[2]

## Findings of Fact and Conclusions of Law

To obtain the requested relief, Ms. Adams must show a likelihood of prevailing at a hearing on the merits. Tenn. Code Ann. § 50-6-239(c)(6) (2023).

### *Medical benefits*

The initial question is whether SunCrest must comply with Dr. Prasad's referrals for treatment of Ms. Perry's vestibular disorder and tinnitus. The parties agree that Dr. Prasad, an authorized treating physician, referred Ms. Adams to an ENT and ophthalmologist. SunCrest asserts that it does not need to honor them because the need for the specialist treatment is not causally related to the work accident.

The Workers' Compensation Law states that an employer must furnish medical treatment made reasonably necessary by a work accident. *Id.* at -204(a)(1)(A). An "injury" includes an "injury by accident . . . arising primarily out of and in the course and scope of employment" that causes the need for medical treatment. *Id.* at -102(12)(A). An injury causes the need for medical treatment "only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent" in causing the need for medical treatment, considering all causes. *Id.* at -102(12)(C).

Here, both parties sent letters to Dr. Prasad. Turning first to SunCrest's attorney's letter, Dr. Prasad checked "yes" when asked, "Would you agree that a referral to the ENT specialist for a diagnosis of tinnitus is <u>not</u> more than 50% related to the work incident on March 3, 2023?" (Emphasis in original). Dr. Prasad likewise checked "yes" when asked, "Would you agree that the referral for blurry vision to an ophthalmologist was not more than 50% related to the work incident on March 3, 2023?" Based on these responses, SunCrest did not honor the referrals. It contended that the authorized treating physician, whose opinion is presumed correct under section 50-6-102(12)(E), does not believe they relate to work.

Ms. Adams's letter did not ask Dr. Prasad's causation opinion linking the referrals to the work accident. It instead asked compound questions about whether the referrals were necessary and whether he is qualified to give causation opinions.

---

[2] SunCrest noted in its brief that Ms. Adams returned to work without restrictions on March 5, 2024.

Ms. Adams first asked, "Do you agree or disagree that based on clinical findings and reports to you by Ms. Adams that she has dizziness[,] which may be some form of vestibular disorder, you opine that she needs to see an ENT specialist?" Dr. Prasad wrote "yes." The Court presumes that Dr. Prasad meant that he "agrees" that Ms. Adams needs to see an ENT. Counsel then asked Dr. Prasad if he cannot give a causation opinion regarding Ms. Adams's vestibular disorder and her striking her head at work. Dr. Prasad wrote, "I can opine on neurologic etiologies of vestibular disorder."

As for the tinnitus, Ms. Adams asked the doctor whether he agreed or disagreed that she "suffers from ringing in her ears[,] which could be tinnitus," and if "she needs to see a specialist most likely an ENT, who can diagnose and treat tinnitus?" Dr. Prasad wrote "yes"—again meaning "agree." She asked Dr. Prasad if he cannot give an opinion as to whether the tinnitus is causally related to striking her head in her work injury. Dr. Prasad wrote, "I can opine on neurologic etiologies of tinnitus."

Ms. Adams's final questions about the blurred vision asked the doctor whether he agreed or disagreed that she should be referred to an ophthalmologist for it. Dr. Prasad wrote "yes," meaning "agree." Finally, she asked the doctor if he is unable to give a causation opinion on whether the blurred vision is causally related to her striking her head at work. Dr. Prasad wrote, "I can opine on neurologic etiologies of visual symptoms."

Considering both letters as a whole, the Court finds, based on SunCrest's letter, that Dr. Prasad does not believe the referrals are related to Ms. Adams's work accident. Considering Ms. Adams's letter, the Court finds that Dr. Prasad believes Ms. Adams needs treatment from an ENT and an ophthalmologist. The Court further finds that Dr. Prasad believes he is qualified to give causation opinions about whether vestibular disorder and tinnitus might arise from a blow to the head.

What Ms. Adams's lawyer did not ask, unfortunately, is whether the referrals and need for additional treatment of vestibular disorder and tinnitus arose primarily out of employment—meaning that to a reasonable degree of medical certainty, striking her head at work contributed more than 50% in causing Ms. Adams's need for the referrals and additional treatment, considering all causes.

The Appeals Board has held that, when the only medical opinion addressing causation in the record is contrary to an employee's position, "this opinion must carry the day, as there is no authority to award benefits in the face of undisputed medical evidence that an injury did not arise primarily out of the employment." *Berdnik v. Fairfield Glade Com'ty Club,* 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *16 (May 18, 2017).

Ms. Adams's sole proof—Dr. Prasad's responses to her letter—do not convey *any* causation opinion, much less one that supports her position. She bears the burden of proof.

Tenn. Code Ann. § 50-6-239(c)(6). Therefore, the Court cannot find on this record that Ms. Adams has satisfied her burden to show that Dr. Prasad believes her need for treatment by specialists is related to the work incident. The Court holds that she is unlikely to prevail at trial on this request.

*Temporary partial disability*

Temporary partial disability refers to "the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Hackney v. Integrity Staffing Solutions, Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *11 (July 22, 2016) The trial court considers whether an employee has made a "meaningful return to work" to determine whether an employee is entitled to temporary partial disability benefits "in the face of an offer of light-duty work." *Id.* at *12. When considering whether an employee made a meaningful return to work, the trial court must assess "the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to return to work." *Id.* at *12-13. Ultimately, "[t]he resolution of what is reasonable must rest upon the facts of each case and be determined thereby." *Id.* at *13.

Here, SunCrest offered Ms. Adams nursing work within her restrictions on December 14, 2023. The letter advised her that she should contact a supervisor or Ms. Guidry if she believed the work exceeded her restrictions.

SunCrest repeated the offer on January 5, 2024, asking her to report to work the next day. Ms. Adams declined due to personal, unrelated doctor appointments. Ms. Adams also asked about her specific assignments and did not receive a response to that question. However, in the January 8 email, Ms. Guidry again offered her work within her restrictions. She specified that Ms. Adams's duties would include visiting patients where she would not have to work outside of her restrictions, with a "focus on medication or otherwise [would] be hands off visits that will not require . . . [carrying] a nurse's bag." Ms. Guidry offered an alternative if these types of patients were unavailable—to perform "administrative work, which [would] primarily include answering phones or auditing files."

In sum, SunCrest made three separate offers of light duty, the last of which specifically outlined her tasks. SunCrest also identified two individuals whom Ms. Adams could contact if she believed the work exceeded her restrictions.

In contrast, Ms. Adams offered no proof of "additional restrictions" from Dr. Willis, and Dr. Prasad placed none. Her only proof on this issue is her vague assertion to Ms. Guidry that she never refused or denied work, which rings hollow. The Court finds that SunCrest reasonably attempted to return Ms. Adams to work, and she acted unreasonably in failing to attempt a return. Therefore, at this time, Ms. Adams is unlikely to show at trial that she is entitled to temporary partial disability benefits.

IT IS, THERFORE, ORDERED AS FOLLOWS:

1. Ms. Adams's requests for panels of specialists, temporary disability benefits, and attorney's fees are denied at this time.

2. A status hearing will take place on **June 10, 2024, at 10:15 a.m. Central Time.** The parties must call 615-532-9552 or 866-943-0025.

**ENTERED April 25, 2024.**

_Kenneth M. Switzer_

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

## Appendix

The Court considered these documents:

1. Petition for Benefit Determination
2. Causation letter sent by employer to Dr. Prasad, February 27, 2024
3. Employer's position statement to mediation specialist, February 20, 2024
    a. LHC Group return-to-work offer letter, December 14, 2023
    b. Email communications between employee and Laney Guidry, January 4-8, 2024
    c. Medical records
        i. Dr. Willis, March 21, 2023
        ii. PA Bragdon, May 5, 2023
        iii. PA Bragdon, June 9, 2023
        iv. Dr. Willis, June 30, 2023
        v. Dr. Willis, August 10, 2023
        vi. Dr. Willis, October 26, 2023
        vii. Work release, September 12, 2023
        viii. Work release, October 26, 2023
        ix. Work release, December 5, 2023
        x. Dr. Prasad, October 11, 2023
        xi. MRI brain without contrast, October 24, 2023
        xii. Order for shoulder MRI, December 5, 2023
4. Dispute Certification Notice
5. Hearing Request and attachments
    a. Affidavit/written testimony
    b. Employee letter to Dr. Prasad, March 1, 2024
6. Docketing Order

7. Employer's Pre-Hearing Brief and attachments
   A. Concentra, March 3, 2023
   B. CT-scan results, March 4, 2023
   C. C-42, March 21, 2023
   D. Dr. Prasad, October 11, 2023
   E. Referrals
   F. Return-to-Work Offer, December 14, 2024
   G. Emails communications between employee and Laney Guidry, January 4-8, 2024
   H. Causation letter sent by employer to Dr. Prasad, February 27, 2024
   I. Employee letter to Dr. Prasad, March 1, 2024

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on April 25, 2024.

| Name | Certified Mail | Regular mail | Email | Sent to |
|------|----------------|--------------|-------|---------|
| Tim Bowden, Employee's attorney | | | X | Bowden_law@bellsouth.net Bowden1eric@gmail.com |
| Troy Hart, Sarah Best, employer's attorneys | | | X | wth@mijs.com shbest@mijs.com dmduignan@mijs.com |

_____Penny Shrum_____
Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

8



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*